SUPREME COURT.    Jefferson General Term, October, 1862.
*Mullin, Morgan* and *Bacon,* Justices.

## THE PEOPLE *v.* JOHN DURKIN.

A prisoner may be convicted of arson in the second degree, as described in 1 R. S., 667, § 2, under a count charging that offense, if sustained by the evidence, although the facts proved would authorize his conviction for arson in the first degree under an indictment properly charging the higher offense.

The words, "not being the subject of arson in the first degree," used in the statute defining arson in the second degree (2 R. S., 666, § 2), were intended to distinguish between different degrees of the same general offense, with a view to graduate the punishment, and do not create an exception which the pleader is required to negative in charging the offense of arson in the second degree.

THE defendant was tried at the Onondaga county Oyer and Terminer, in June, 1862 — Justice MULLIN presiding.    The indictment contained seven counts: the first two for arson in the first degree; the third, fourth and fifth for arson in the second degree; and the sixth and seventh for arson in the third degree.    On the trial, the second, fifth, sixth and seventh counts were disposed of by the court, or abandoned by the district attorney.    The first count charged the defendant with setting fire to his own house in the night time, "there, then and there being within said dwelling house some human being, to wit, Ann Welch."    The fourth count charged the defendant with setting fire in the night time to his own house, "which said building was then and there adjoining to a certain inhabited dwelling house there situate of one Austin Wagner, he the said Austin Wagner then and there being within the said dwelling house of him the said Austin Wagner, and the said dwelling house of him the said Austin Wagner then and there being endangered by such firing."    The third count was the same in substance, except it charged that the fire endangered the inhabited dwelling house of one Patrick Lynch.    On the trial, evidence was given tending to prove that Ann Welch, mentioned in the first count, was an accomplice of the defendant.    The court charged the jury that, if Ann Welch was an

accomplice, there could be no conviction under the first count of the indictment. Ann Welch gave evidence tending to show that one John Smith lodged at the house of the defendant when it was fired. The counsel for the defendant asked the court to charge that, if Ann Welch was an accomplice, and Smith was not an accomplice, there could be no conviction under the indictment. This the court refused to charge, and the defendant's counsel excepted. The defendant's counsel then requested the court to charge that the defendant could not be convicted under the third and fourth counts of the indictment, for the reason that the building was a dwelling house, and was the subject of arson in the first degree. The court declined so to charge, and the defendant's counsel excepted. The jury, by their verdict, found the defendant guilty of arson in the second degree. The prisoner's counsel tendered a bill of exceptions, and the judgment was stayed until the same could be heard at general term upon *certiorari*.

*D. Pratt*, for the prisoner.

I. The court erred in refusing to charge the jury that, if Ann Welch was an accomplice and Smith was not an accomplice, there could be no conviction under the third and fourth counts:

1. The court had charged that the prisoner might be convicted of the first degree, although the house was occupied at the time by the prisoner himself. This had been so held in the Court of Appeals. (*People* v. *Shepherd*, 19 *N. Y. R.*, 537.)

2. It would follow that, if Durkin set fire to the house while Smith, who was not an accomplice, was lodging therein, it was a case of arson in the first degree.

*a.* To constitute arson in the second degree, under these counts, the building must be a shop, warehouse or other building *not the subject of arson* in the first degree. (2 *R. S.*, 666, § 2.)

*b.* If Smith lodged in the house at the time, and was not an

The People *v.* Durkin.

accomplice, it was clearly the subject of arson in the first degree.

*c.* The general rule is, that the higher crime merges crimes of inferior grade, especially where the higher crime is capital. (1 *Russ.*, 50.)

*d.* It is the case of a conviction of an inferior grade where he might be convicted of the superior. There was no count to which the evidence could apply.

II. The court erred in refusing to charge generally that the prisoner could not be convicted under the third and fourth counts of the indictment:.

1. The building, without regard to the persons lodging therein, was the subject of arson in the first degree.

*Frank Hiscock* (District Attorney), for the People.

There was no error in the charge. I apprehend it is to be contended by the prisoner's counsel that the proposition embodied in the exceptions is, that if *some* Smith was in the building at the time of the firing, and was not an acccomplice of Durkin, then the prisoner could not be convicted of arson in the second degree, on account of the exception in the statute defining that degree of arson—" not being the subject of arson in the first degree;" but no such question is raised by the exception.

*a.* The exception does not even assume a Smith was in the building, and it was not an assumed fact upon the trial.

*b.* But the assumption of such a fact by the exceptions would not be sufficient. It was a question of fact, to be submitted to the jury.

But granting that the question, as insisted on by the counsel for the prisoner, was fairly before the court, then we say it was properly disposed of by the court.

*a.* We concede the doctrine that usually in criminal statutes an exception in the enacting clause must be negatived. That is doubtless the case when a single section of the statute, independently by itself, defines a crime complete in all its degrees.

*b.* But when there is a series of sections of a statute defining an offense, each section defining a degree of the same offense; or where there is a gradation of offenses of the same species as in arson, it is not necessary to negative the exceptions or allege that the case is not embraced in some other section than the one in question. It is sufficient if the evidence may be applied to the section by virtue of which the punishment is to be awarded.

It is a well established rule, that where there are several species of the same general crime, with more or fewer circumstances of aggravation, as larceny, grand and petit, and felony aggravated by being a second offense, burglary, murder, manslaughter and many others, and subject to a gradation of punishments, it is not necessary to negative those circumstances which would render it more aggravated. (*Commonwealth* v. *Griffin,* 21 *Pick. R.,* 523; *Same* v. *Squire,* 1 *Metc. R.,* 258; *Same* v. *Devoe,* 3 *Id.,* 316; *Same* v. *Larnard,* 12 *Id.,* 250.)

The objection that the building fired was a dwelling house, and therefore the subject of arson in the first degree, is not tenable. A dwelling house is no more the subject of arson in the first degree than in the third and fourth degrees. (§§ 4 *and* 6, *p.* 946, 3 *vol.,* 5 *ed., R. S.*) The bare fact that it was a *dwelling house* does not bring it within the exception of the statute defining arson in the second degree. (*See* § 9, *p.* 936 *of same volume.*) And this is made more manifest by the reading of 4th section (*p.* 946, *vol. last cited*), which provides against burning, in the night time, the *house of another,* not the subject of arson in the first or second degree; showing clearly that the legislature intended that a house (*see* § 2, *same page*) might be the subject of arson in the second degree, if fired under the proper circumstances of aggravation.

*By the Court,* MORGAN, J. The defendant was convicted of arson in the second degree, for firing a building adjoining a certain inhabited dwelling house, situate in the city of Syracuse, belonging to one Austin Wagner. The same indictment charged the defendant with firing his own house in the night

time, it being a dwelling house, and "there, then and there being within the said dwelling house some human being, to wit, one Ann Welch."

The evidence tended to show that Ann Welch was an accomplice. The court charged the jury that if Ann Welch was an accomplice, then the prisoner could not be convicted under that count.

Ann Welch swore that one John Smith was in the defendant's house the night of the fire, and slept with the defendant.

The defendant's counsel thereupon raised the point that if Ann Welch was an accomplice, and Smith was not, there could be no conviction under the indictment. The court overruled the point, and the prisoner's counsel excepted.

And this is the only point of any serious difficulty in the case.

The indictment did not charge that John Smith was in the house at the time of the fire. If there had been such a charge, perhaps the jury would have found the defendant guilty of arson in the first degree, for the jury might have believed Ann Welch as to Smith's lodging there at the time of the fire. Evidently the jury must have believed that Ann Welch was an accomplice, or they would have found the defendant guilty of arson in the first degree.

Does it lie in the mouth of the defendant to say that he was guilty of a higher crime than the one for which he was convicted, when the difference is only in degree? The language of this objection is, that the defendant was guilty of arson in the first degree, and therefore was not guilty in the second degree.

The statute (2 *R. S.*, 657, § 9), defines arson in the first degree to consist "in willfully setting fire to or burning in the night time a dwelling house, in which there shall be at the time some human being; and any house, prison, jail or other edifice, which shall have been usually occupied by persons lodging therein at night, shall be deemed a dwelling house of any person so lodging therein."

The offense of arson in the second degree, for which the defendant was convicted, is defined as follows: " Every person who shall willfully set fire to or burn in the night time any shop, warehouse or other building, *not being the subject of arson in the first degree*, but adjoining to or within the curtilage of any inhabited dwelling house, so that such house shall be endangered by such firing, shall, upon conviction, be adjudged guilty of arson in the second degree." (2 *R. S.*, 666, § 2.)

It is argued that if the defendant's house was occupied by John Smith as a lodger at the time the defendant fired it, it was the subject of arson in the first degree, and therefore the firing of it, although it endangered Wagner's house, which adjoined it, could not be arson in the second degree. This argument, if sound, would require the district attorney to specify in his indictment that the building set fire to was not the subject of arson in the first degree. The construction contended for makes it a part of the ingredient of the offense of arson in the second degree, that the house should not be so circumstanced as to be the subject of arson in the first degree. It is admitted that the language of the statute seems to favor such a construction, although in practice it has never been thought necessary to incorporate the negative into the indictment by way of exception.

The usual rule is well settled that where the accusation includes an offense of an inferior degree, the jury may convict of the less offense. Thus upon an indictment for burglariously stealing, the prisoner may be convicted of a simple larceny; upon an indictment for stealing privately from a person, the prisoner may be convicted of simple larceny (1 *Chitty Cr. L.*, 638); and by our Revised Statutes the jury may find the prisoner guilty of an offense in an inferior degree when the offense consists of different degrees. (2 *R. S.*, 702, § 2.) In *The People* v. *Jackson* (3 *Hill R.*, 99), the indictment charged the defendant with producing an abortion of a quick child, which is punishable as a felony. The jury were allowed to convict the defendant of a misdemeanor only, the proof being that the child was not quick.

The People *v.* Durkin.

And where there are several species of the same general crime, with more or fewer circumstances of aggravation, subject to a gradation of punishment, the defendant may be convicted of either species, under an indictment which charges the higher offense.

It may be said, however, that the offense of arson in the first degree does not include arson in the second degree, but that it is a different offense. True, it does not necessarily include the inferior offense; but when it does so in fact, where is the difficulty of bringing it within the general rule? If there is no inhabited dwelling house adjoining the one set fire to, there could be no arson in the second degree. But it happens here there was such a building; so the defendant was not only guilty of firing his own house, but of endangering that of his neighbor adjoining it. This last was a lesser offense, but it was included in the greater offense in this particular case; and the indictment was drawn with a separate count, charging it as a distinct offense, so as to meet the facts of the case.

It was not supposed, on the argument, that the objection would be available, if it had been left to the jury to decide, as a matter of fact, whether Smith was a lodger or not in the defendant's house. If no one lodged there, the building would not be the subject of arson in the first degree, and the firing of it would be arson in the second degree — made so by the fact that it adjoined the inhabited dwelling house of Austin Wagner.

The main difficulty, therefore, arises out of the statutory definition of arson in the first and second degrees; for it is apparent that the prisoner was guilty of arson in the first degree, upon the hypothesis that his own building contained Smith as a lodger. The jury were, however, told by the judge that, notwithstanding this, they could legally convict him of arson in the second degree. The exception is to the legal proposition, and not to the propriety of advising the jury that they ought not to convict the defendant of the second offense if they believed him guilty of the principal offense.

The question, then, comes back to the point whether the defendant may be indicted and convicted of arson in the second degree, when the facts proved on the trial would justify a conviction for the principal offense, provided the indictment had properly charged it. No doubt a person may be indicted and convicted of larceny, although the facts prove a burglary. Evidence of an assault with a weapon dangerous to life, will support a complaint for a simple assault, even if the complaint alleges that it was not committed with a weapon dangerous to life. (14 *Gray R.*, 100.) And in *Commonwealth* v. *Pike* (3 *Cush. R.*, 181), the defendant was held to have no just ground of objection to a conviction upon an indictment for manslaughter, because the facts proved that he had been guilty of murder. The propriety of taking such a conviction is another matter. So here there is no difficulty in coming to the conclusion that the defendant was guilty of setting fire to his own building in the night time, which adjoined the inhabited dwelling house of Austin Wagner, and that the fire endangered Wagner's house. But it is said his own house was "the subject of arson in the first degree," whereas the statute speaks of firing a building "not the subject of arson in the first degree." I have already suggested that if these words are a part of the description of arson in the second degree, they should be negatived in the indictment. The plain import of such words, if they constitute one of the ingredients of the offense, creates an exception limiting the application of the statute as much as if it should read thus: "Provided no one shall be liable to indictment and conviction for arson in the second degree, if the building set fire to shall be an inhabited dwelling house, in which there shall be at the time some human being."

I think it was not the object of the statute to create such an exception, but simply to define the different degrees of the same crime with a view to graduate the punishment. The words, "Not being the subject of arson in the first degree," were only intended to distinguish between the different degrees of the same general offense. They prove the general identity of

of the crime by a provision which declares, in effect, that the defendant shall not be the subject of. punishment under both sections of the statute. And· it follows that a conviction under one section of the statute would bar a conviction under the. other.

The court, in *Commonwealth* v. *Squires* (1 *Metc. R.*, 258), gave the same construction to a statute somewhat similar to our own. By the Revised Statutes of Massachusetts (*ch.* 126, § 5), it was enacted that "any person who shall maliciously burn, either in the night or day time, any banking house, store, manufactory, mill, barn, stable, ship, office, outhouse, or other building whatever of another, *other than is mentioned in the third section,*" shall be punished by imprisonment in the State prison not more than ten years. Section third enacted that "any person who shall willfully and maliciously burn, in the night time, any meeting house, church, court house, town house, college, academy, jail or other building, erected for public use, or any banking house, warehouse, steam manufactory or mill of another (being with the property therein contained of the value of $1,000), or any barn, stable, shop or office of another, within the curtilage of any dwelling house or any other building, by the burning whereof any building mentioned in this section shall be burned in the night time, shall be punished by imprisonment in the State prison for life."

The indictment under the fifth section did not set forth that the building was "other than is mentioned in the third section." The court says (*p.* 263): "This is not like the ordinary case of a statute declaring certain acts to be a crime under certain qualifications contained in a proviso or exception. Upon comparing the third and fifth sections of the statute, it is obvious that the exception here is rather to be considered in the light of a gradation of punishments to different degrees of the same species of offense; the third section providing, as it does, that all cases of willful and malicious burning therein described, shall be punished by imprisonment in the State prison for life, and the fifth section, after specifying certain cases, then providing generally for the punishment for burn-

ing all other buildings not mentioned in the third section. It is only another example of the same kind of gradation of punishments that is provided in cases of larceny of the various grades."

The same construction was given to another similar statute in Massachusetts, in *Devoe* v. *The Commonwealth* (3 *Metc. R.*, 316 ;' *Statutes of* 1804, *ch.* 143, § 4). The indictment charged the defendant with breaking and entering, in the night time, a certain office, and stealing therein, without adding the words, "not adjoining to or occupied with a dwelling house," as contained in section four defining the offense.

·The court say : "It is conceded, as a general rule, that two distinct offenses cannot be charged in the same indictment ; but this rule is subject to exceptions, one of which is, where the same combination of facts will bring a case within different penal provisions." (*p.* 323.) I will cite another passage from the opinion of Chief Justice SHAW,. at page 327 : "If it is intended to charge the mitigated offense, it is sufficient to charge those facts which constitute the crime, simply omitting the circumstances which, by the statute, would aggravate the offense and increase the punishment. In such cases, the words in the statute, "without being armed," &c., are not so much designed to constitute a description of the offense as to show that it is intended to distinguish it from a higher grade of offenses, within which it would fall if those circumstances existed." (*And see Larned* v. *The Commonwealth,* 12 *Metc. R.,* 240.)

According to the authority of these cases, it is not necessary to set forth the facts, although they exist, which constitute the higher offense, where there is a gradation of offenses of the same species, unless the prosecutor designs to convict for the higher offense; and it does not lie with the defendant to object that the facts proved brings his case within a higher grade of offense of the same species ; for a former conviction or acquittal of a minor offense, is a bar to a prosecution for the same act charged as a higher crime, whenever the defendant, on trial of the latter, might be legally convicted of the former,

The People v. Durkin.

had there been no other prosecution. (2 *Leading Cr. Cas.*, by *Burnett & Heard*, 558.) In *Johnson* v. *The People* (1 *N. Y. R.*, 379), the indictment charged all the facts necessary to constitute the crime of manslaughter, except the intent with which the acts were done, and in its conclusion, it characterized the crime as manslaughter; but the only intent charged was an intent to produce a miscarriage; and held that the indictment was fatally defective for the felony, but good for the misdemeanor. And it was conceded that a conviction for a misdemeanor, under such an indictment, would be a bar to a subsequent indictment for the felony.

In my opinion the defendant in this case could have been indicted and convicted, upon the evidence, of arson in the second degree, if there had been no other count in the indictment. It would be no defense to the charge, that the facts proved authorized his indictment and conviction for arson in the first degree. The objection of the defendant simply disputes this proposition, for it can make no difference that there was also a count charging him with the higher offense. That count was not proved. The defendant now says, the district attorney ought to have indicted him for the higher offense, and charged that John Smith was in his own house when it was set on fire. If we allow the objection, it may turn out on a second indictment, that his accomplice, Ann Welch, would locate some other Smith in the same house instead of John Smith, or, what is more probable, it might appear that there was no one but his accomplices in the house when it was burned. And thus the defendant might obtain impunity by changing his ground upon each successive charge, while in fact he was guilty of arson both in the first and second degrees. I think the conviction is right and should be sustained.

Conviction affirmed and proceedings remitted to the Onondaga Oyer and Terminer.